UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

WINCHESTER DIVISION



JUN 0 4 2020

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

| | | |
|---|---|---|
| Ron Glasgow, | ) | Civil Action No:  4:20 -CV--0020 |
| Plaintiff | ) | Judge: Travis R. McDonough |
| V | ) | |
| Governor Bill Lee, | ) | |
| Governor of Tennessee | ) | |
| (In His Official Capacity) | ) | |
| Defendant | ) | |
| | ) | |
| Morning Pointe Foundation, | ) | |
| Defendant | | |

**Amended Complaint** (STATE CLAIM #1)


Pursuant to the Federal Rule of Civil Procedure, RULE 15 (A)(1) , without leave of the Court, Plaintiff amends his original complaint  based upon additional relevant and reasonable information obtained by the Plaintiff. This amended complaint also complies with Local Rule 15.1. It serves as the operative pleading. The amended complaint also complies to 28 U.S.C. Section 1367 (federal courts may exercise supplemental jurisdiction over state law claims that arise from the same case or controversy presented in the federal lawsuit.

 This amended complaint also conforms to ORDER entered by Magistrate Judge Susan K. Lee on May 29, 2020, Document 26.

The below listed Defendant is added and identified as follows:

**Morning Pointe Foundation,**

**DBA /Morning Pointe Senior Living**

**DBA/ Morning Pointe Assisted Living**

Morning Pointe Foundation has a Control Number, 000763916, as reported by the Tennessee Secretary of the State and has an EIN #47-1301607.

The Defendant is on file of being Non-Profit Domestic Corporation, doing business in Tennessee.

The Tennessee Secretary of State does not list a registered agent for the entity, in fact, a phone call to the Secretary of State provides information that the Morning Pointe Foundation lists itself as the registered agent.

A more specific individual, based upon a May 11, 2020 conference call with Morning Pointe Foundation, indicates that a Mr. Aaron Webb, the Chief Operating Officer, would be the appropriate individual recipient for the entity.

Morning Pointe Foundation's Corporate Office is located at:

**6020 Arbury Way**

**Ooltewah, TN. 37363**

**877-776-4683**

STATE CLAIM #1

<u>Jurisdiction</u>:  This Court already has jurisdiction in this matter, under 28 U.S.C. Section 1367.

<u>Plain Statement of the Claim and Facts Showing that the Plaintiff is Entitled to Relief: 1-2</u>

1. Defendant has too narrowly construed and erroneously acted on their own definition of" imminent end of life care", as it relates to visitation, as outlined in Governor Lee's Order 30. Plaintiff's mother is receiving hospice care and is terminally ill in Defendant's facility. Defendant continues to deny visitation rights to Plaintiff, as of this date, which causes damage. Defendant violated the Governor's Emergency Order 30. Defendant has acted with malfeasance or nonfeasance.

2. Defendant has too narrowly construed and erroneously acted on their own definition of "end of life care", as it relates to visitation, as outlined in Governor Lee's Order 38. Defendant continues to deny visitation rights to Plaintiff, as of this date, which causes damage. Defendant violates the Governor's Emergency Order 38 and continues to this date. Defendant has acted with malfeasance or nonfeasance.

Statement of Facts Concerning Morning Pointe Foundation

This case was transferred to the Eastern District of Tennessee, Winchester Division on or about May 19, 2020, on the request of the Plaintiff, because venue was more proper at that location.

Judge Waverly D. Crenshaw, of the Middle District of Tennessee, Nashville Division, identified that Morning Pointe may have been interpreting "end of life care "too narrowly causing irreparable harm to Plaintiff. Judge Crenshaw reminded Morning Pointe that Plaintiff had been COVID tested regularly and agrees to be tested regularly in the future, therefore, asking Morning Pointe to reconsider their own unique "end of life care" guidelines to avoid such identified irreparable harm. (Order of May 8, 2020.)

Judge Crenshaw asked Morning Pointe, in his ORDER, (May 8, 2020) to enter a volunteer discussion with the Plaintiff on a conference call on May 11,2020. The

judge's Clerk sent a copy of all documents on file with the Court to Morning Pointe PRIOR TO THIS CONFERENCE CALL. Morning Pointe accepted and agreed to the discussions. Judge Crenshaw, to facilitate effective communication, appointed on a limited and temporary basis, Attorney Bill Harbison as the Plaintiff's attorney.

The conference call produced and included:

1) Aaron Webb, a licensed Tennessee attorney, who also is the Chief Operating Officer of the Morning Pointe Foundation.
2) Mandy Taylor, Morning Pointe clinical director
3) Tana Branch-Philpot, Morning Pointe Director at the Tullahoma location.
4) Mary Watson, Morning Pointe corporate personnel, unknown title.
5) Nancy Wood, Morning Pointe Corporate Director of Nursing
6) William Harbison, attorney to Plaintiff assigned on a temporary basis.
7) Plaintiff Ron Glasgow
8) Judge Waverly D. Crenshaw, Federal District Judge

**Plaintiff asked Mr. Aaron Webb the following question:**

***NOTE Mr. Webb stated, at the beginning of the conference call, that as a licensed attorney, he was not representing Morning Pointe Foundation. This entity was not a defendant at that time.

If Governor Bill Lee, amended his ORDER 30, and removed the word IMMINENT before the "end of life care" phrase, or if the Governor allowed your company discretion in the matter of visitation, would you allow me (Plaintiff) visitation to my mother?

Mr. Webb's answer was "NO". Mr. Webb then stated that he would need a written agreement that his company would not be sued if a resident got the COVID virus. This statement was given even though Mr. Webb knew that the Plaintiff had been recently COVID tested twice in recent days and agreed to be regularly tested.

## Additional Plaintiff's Arguments Against Morning Pointe Foundation

1.   Mr. Webb's answer of "NO," denying Plaintiff potential future visitation, indicates his company objective to be the expert in the field in responses to COVID in long term facilities and the willingness of violating Plaintiff's visitation rights. It shows a disregard to comply with the guidelines of the Center of Disease Control (CDC), Tennessee Department of Health, and the Center for Medicare and Medicaid Services (CMS).

Plaintiff's mother is receiving hospice care in this facility, which is being paid by Medicare. Plaintiff's mother is receiving Veterans Administration aid and attendance monetary benefits to stay at Morning Pointe Assisted Living.

Defendant Morning Pointe Foundation is licensed by the State of Tennessee as a long-term health facility, however, is disregarding the visitation guidelines set by the TN. Department of Health, as it relates to compassionate care, i.e., end of life care. Plaintiff pays, each month, a portion of the $4,255.00 to Morning Pointe.

Morning Pointe is violating visitation rights identified in Federal Regulations 43 CFR 483.10. Residential Rights, as amended in 2017.

2.   Morning Pointe Foundation accepted the invitation, to participate in the conference call, the subsequent conversations thus not protected by privilege, normally afforded by public policy.  Morning Pointe Foundation was not a Defendant at the time of the conference call, nor was being considered a defendant. Plaintiff, at that time, only thought that Morning Pointe was detrimentally relying on the Governor Order 30, by inserting the word "IMMINENT" before "end of life care". Therefore, Morning Pointe is now ripe as a Defendant, as causing actual damage and other harm, so identified by Judge Crenshaw.

3.   Morning Pointe Foundation's, disallowance of the Plaintiff, now and in the future, to not allow visitation is a current and anticipatory intended breach of Plaintiff's visitation rights.  Plaintiff has used every means imaginable to show that

he would be the less likely individual to cause COVID transfer to any resident.(no risks to the residents) Plaintiff's mother is also free of COVID, as evidence given in a written document by her primary care physician, on file with the Morning Pointe Foundation, on or about April 23, 2020.

However, Morning Pointe Foundation has not performed by the same safeguards in protecting the residents in their facility. At this present date, Morning Pointe has just recently for the first time ( May 31, 2020) COVID tested their 30+ employees. This is evidence that Morning Pointe did not perform the best practice. The  assisted living facility is in Coffee County, and in the same town of Tullahoma that the Coffee County Health Department is located. The Health department gives free COVID testing 5 days per week, as early as April 23, 2020. The Plaintiff has three times been tested at this location. The fact that Morning Pointe Foundation has not tested their employees was given to the Plaintiff per a conversation of one of their managers on May 16, 2020 and was verified by another employee on May 17, 2020. Therefore, the Morning Pointe Foundation is guilty of latches, having unclean hands, but treats the Plaintiff in a  different manner. Also, Morning Pointe did not require Hospice personnel to be COVID tested upon entry to the facility.

Defendant Morning Pointe's 30+ employees are in a different class group than Plaintiff for the argument of safety protections. Their employees have spouses, have children, and have family members living in the same household. They work 8 to 10 hrs. per shift and have part-time employees coming and going each day. There were acting as "de facto visitors". Here, in comparison, Plaintiff lives by himself in a single-family dwelling, and socially isolates and performs social distancing during this pandemic.

The CDC, TN Department of Health, and the CMS guidelines for visitation, mirror the same guidelines for employees of long-term facilities in Tennessee.


4.    Plaintiff's sister, adult child of Plaintiff's mother, did attempt a face time computer visit with Plaintiff's mother on May 13, 2020. It was unsuccessful due to the lack of concentration, confusion, and hearing loss. It was not commensurate with a soon to be 99 year of age terminally ill  hospice patient.

A similar way of communication was earlier performed by the same adult child by visiting from the outside of a window. It was also unsuccessful.

Plaintiff was informed by a Morning Pointe Foundation manager, on May 16, 2020, that the residents are not allowed to leave their rooms unless they are checking in their mailbox inside the facility. This social isolation, of the Plaintiff's mother ,further causes harm, thus gives additional credibility to Plaintiff's visitation rights.


5.    Defendant Morning Pointe's employee nurse told Plaintiff on May 16, 2020, that Plaintiff's mother was vomiting bile that morning. Bile is the stomach acids in the small intestines that  gets excreted through the esophagus when there are no contents in the small intestines. Bile is stored in the gallbladder. This is not normal.  Plaintiff's mother has lost significant weight and is presently 99 lbs.  The weight loss is a significant indication of the dying process. Records and communications given to the Plaintiff indicate that the Plaintiff's mother is at end of life, without being afforded 1st amendment rights for herself or for Plaintiff for visitation purposes, thus not affording religious practice.

These additional factors are also present:

1)   Different sleep-wake patterns ( sleeps 20 hrs. per day)
2)  Little or no appetite, little thirst
3)  Smaller or insignificant bowel movement
4)  More pain
5)  Changes in breathing patterns
6)  Withdrawal from people
7)  Talks less
8)  Confusion
9)  Hallucinations
10)      Feels tired and does not leave the room
11)      Loss of bladder or bowel control
12)      Weakening muscles

The Defendants are not only causing actual damage and harm, but also causing pain and suffering damages.

6.   Plaintiff's mother still has individual rights that she expects the Plaintiff to follow. She wants to remain in the assisted living facility because of the 30+ employees that serve responsibilities of care in some form or fashion. (housekeeping, kitchen personnel, nurses, attendants ,etc.) However, Plaintiff's mother does not know that she is at the end of life. She does not know about her cancer and the Plaintiff cannot inform her of these medical conditions over the telephone. It would be inhuman to do this over the telephone. Plaintiff knows his mother better than she knows herself, in other words, Plaintiff's mother would demand that Plaintiff use any means possible to gain access to visitation into the facility, to provide and facilitate religious freedoms and other constitutional rights. She begs the Plaintiff for visitation each day. It affects her emotional well-being and mental health. She is very unhappy because of the refusal of visitation.

Plaintiff took his mother to his house, for 2 weeks, prior to April 23, 2020 and prior to hospice care. Plaintiff's mother asked him to take her back to Morning Pointe because she considers that her home. She thought that she could receive more services ant the facility. Also, Plaintiff's home has an unsafe roof structural damage from a large oak tree falling directly on the roof. The insurance claim has not been completed. There is a question of safety for visitors to the house.

7.   Morning Pointe Foundation, Tullahoma location, only has a staff of LPN. (licensed practical nurses) They do not have a registered nurse more highly trained in identifying complications for the aged community. The facility only has a nurse on duty from 6am to 10 pm. The 10pm to 6am shift only has 3 attendants for the 40+ residents, some of which are on hospice. The visitation of the Plaintiff would allow a more proper amount of care to the Plaintiff's mother. Attendants must check on the residents every 2 hours during 10pm to 6am. A resident appearing to be asleep in bed might, in fact,  might be near death to the untrained non- medical staff. A hospice nurse may or may not be able to be summoned during these night-time hours.

8.  Plaintiff's mother fell in her room, on June 2, 2020, causing a shoulder fracture.

A much-promoted Morning Pointe window visit was being attempted. Plaintiff contends that Morning Pointe was negligent in their assistance in this awkward outside visit causing physical damage to Plaintiff's mother.

9. A letter was sent to Plaintiff, by Lang Wiseman, Chief Counsel of Defendant Governor Lee, on May 13, 2020. The letter seems to place responsibilities to Morning Pointe Foundation concerning a case by case determination for visitation rights for end of life care. He seems to think that the Licensed Practical nurses, which Morning Pointe only employ are the experts in the field and should make visitation decisions. Morning Pointe seems to pass the responsibility back to the Defendant Governor Bill Lee or are waiting on some magic letter protecting them from liability claims if any resident gets the COVID virus.

Plaintiff has personally seen 2 different Directors of Nursing , at the Tullahoma facility, be terminated, for cause, which Plaintiff identified and reported  acts directed at Plaintiff's mother,  which caused or effected the terminations. These terminations both occurred in the last 2 years 9 months. There have also been several nurses terminated for cause during this same time period. Mr. Wiseman seems to think that medical professionals at the facility are immune from making bad medical decisions, especially concerning end of life care visitation. Those decisions should best be decided by the true experts in the field ,i.e. CDC,CMS, TN. Department of Health.

10.  As of this date, there are no reported cases of COVID in any long-term facility in Coffee county. Plaintiff contends, to the best of his knowledge, there are only 4 of the 95 counties in Tennessee who reported COVID to any resident in long term facilities.

Plaintiff again was COVID tested on this 19th Day of May ,2020. This makes the 3rd consecutive test. Plaintiff will continue to be COVID tested every 2 weeks.

11. Morning Pointe has constructive notice of the information contained within from conversations and filings afforded to them. The Clerk of the Court has sent them the entire documents before the May 11, 2020 Conference call.

Governor Bill Lee has constructive notice, not knowing if the earlier summons has been delivered, but because of the conversations that occurred between Mr. Wiseman and Attorney Harbison, and Jane Young, attorney for the Tennessee Department of Health.

12. Plaintiff's mother's primary care physician, Dr. Tucker, has ordered visitation by family members for the emotional support of the mother.

13. In a second phone conversation with Mr. Aaron Webb, on Thursday May 28, 2020, Mr. Webb told Plaintiff that he considers the "IMMINENT" word before or removed from the term "End of Life Care", to have the same meaning for "end of life care".

Demand for Relief Sought: Plaintiff seeks monetary damages, to be later determined, for actual damage, real damages, perceived damages, pain and suffering damages, punitive damages, consequential damage, and all other damages and relief allowed by state laws and from the Court. Plaintiff also seeks any equitable relief that the Court deems appropriate.

Jury Demand: Plaintiff demands a jury trial all issues triable

Attachments Already on file and earlier delivered to Defendant:


1) ORDER of Judge Waverly D. Crenshaw, May 8, 2020
2) Letter from Attorney Lang Wiseman, May 13, 2020
3) Affidavit of Plaintiff Ron Glasgow, May 13, 2020
4) Centers for Medicare and Medicaid Services (CMS) Guidance for Infection Control, March 13, 2020
5) CDC Interim Guidance for Retirement Communities, March 31, 2020

NEW Attachments:

1) Notice of Injury to Golda C. Glasgow, June 2, 2020
2) Statement of Dr. Tucker, May 29, 2020.

Respectfully Submitted this 4th Day of June, 2020

Ron Glasgow, Plaintiff, Pro Se

603 Stone Blvd.

Tullahoma, TN. 37388      cell 404-579-5162


CERTIFICATE OF SERVICE


I AFFIRM THAT I HAVE this 4th day of June, 2020 sent a copy of Plaintiff's Amended Complaint, State Claim #1 and all new attachments to Defendant's attorney of record, by U.S. mail with proper postage attached and addressed as follow:


Lang Wiseman

Chief Counsel to the Governor

State Capital

600 Charlotte Ave,

Nashville, TN 37243


Aaron Webb, Chief Operating Officer, for Defendant

6020 Arbury way

Ooletewah, TN 37363

This 4th day of June, 2020

Ron Glasgow, Plaintiff Pro Se

603 Stone Blvd., Tullahoma, TN 37388    Cell 404-579-5162

## STATEMENT OF DR. DONALD TUCKER, MD

I am Golda C Glasgow's primary care physician and continue to have her as a patient as of this date.

Ms. Glasgow was placed into hospice care on April 22, 2020 because of a terminal illness, therefore she is receiving "end of life" care, commonly referred to as "compassionate care".

In my professional opinion, visitation by her family, more specifically her son, Ron Glasgow, can safely be performed and accomplished without unreasonably risk to other residents or staff at Morning Pointe Assisted Living- Tullahoma.

Ron Glasgow has shown proof of recent negative covid testing, the latest being May 20, 2020. Ms. Glasgow was cleared for COVID by my earlier written statement.

The facility has in place, visitor screening procedures outlined in guidelines of the CDC, and Tn. Department of Health.

This visitation is needed, on a continual basis, for the emotional support of Ms. Glasgow.

Sincerely,

Donald Tucker, MD_____ May 29, 2020

100 William Northern Blvd.

Tullahoma, TN 37388

931-454-0489

# NOTICE OF INJURY TO GOLDA C GLASGOW, JUNE 2, 2020,

## WHILE INSIDE MORNING POINTE

In an effort to perform a highly promoted Morning Pointe "window visit" to my mother on June 2, 2020, two Morning Pointe employees assisted my mother to her wingback chair while I peered into her window, at approximately 10:30am.

They walked her from her rocking chair to the wingback chair closer to the window in her room. Her phone appeared to be turned off.

They left her rollator near her rocking chair, not accessible to her. She cannot walk without it. The CNA's left the room.

I went to the front door of Morning Pointe and asked Jennifer Davis to retrieve mother's cell phone and bring it to me because it was powered off. I waited and powered the phone on. I ask Ms. Davis to give it back to mother while she was in her room sitting in the wingback chair.

I arrived back to the window and called her cell phone at 10:36. Ms. Davis placed it on a small table away from the wingback chair. I rang her phone. Mother stood up and walked to the table without the aid of her rollator holding on to the bed frame. I was not aware that the phone was on this table or else I would have immediately attempted to stop her from walking over there. The window was in the down position and the AC unit was on causing noise. I was not able to get her attention because of her loss of hearing as she walked back.

Mother was attempting to walk back and fell in front of the window.

The rollator continued to be in the middle of the room inaccessible to her in the attempts to walk. In other words, she would have had to walk unassisted in order to retrieve the rollator.

I called Morning Pointe and immediately nurse Paige and two CNA employees picked her up off the floor and placed in the bed. Tana Branch-Philpot entered the room, whereas I talked to her on mother's cell phone.

I notified and left messages to Compassus Hospice and went to the office after no return call. Nathasha Atkins, RN, from Compassus Hospice arrived and medically assessed mother.

We agreed that a 98 year of age hospice patient taking a strong pain medicine would not be of help in assessing her pain and injury.

She was transported by ambulance to the local hospital at 12:47 pm. X-rays were performed.

She has a fractured left shoulder. Her doctor informed me that she probably would never recover from the fracture because of her compromised terminal illness.

The issue is whether placing the phone on a table away from her reach was negligence, when the purpose of immediately using the phone was for conversation at a window visit, also knowing she cannot walk without the aid of a rollator.

The issue is whether leaving the rollator away from her, also is negligence, knowing that she cannot walk without it. Mother always has her rollator at either chair where she sits or at her bed where she lies.

Ron Glasgow _____ June 2, 2020

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

WINCHESTER DIVISION



FILED

JUN 0 4 2020

Clerk, U. S. District Court
Eastern District of Tennesse
At Chattanooga

| | | |
|---|---|---|
| Ron Glasgow, | ) | Civil Action No: 4:20 -CV--0020 |
| Plaintiff | ) | Judge: Travis R. McDonough |
| V | ) | |
| Governor Bill Lee, | ) | |
| Governor of Tennessee | ) | |
| (In His Official Capacity) | ) | |
| Defendant | ) | |
| | ) | |
| Morning Pointe Foundation, | ) | |
| Defendant | | |

**Amended Complaint** (STATE CLAIM #2)

Pursuant to the Federal Rule of Civil Procedure, RULE 15 (A)(1) , without leave of the Court, Plaintiff amends his original complaint based upon additional relevant and reasonable information obtained by the Plaintiff. This amended complaint also complies with Local Rule 15.1. It serves as the operative pleading. The amended complaint also complies to 28 U.S.C. Section 1367 (federal courts may exercise supplemental jurisdiction over state law claims that arise from the same case or controversy presented in the federal lawsuit.

This amended complaint also conforms to ORDER entered by Magistrate Judge Susan K. Lee on May 29, 2020, Document 26.

The below listed Defendant is added and identified as follows:

**Morning Pointe Foundation,**

**DBA /Morning Pointe Senior Living**

**DBA/ Morning Pointe Assisted Living**

Morning Pointe Foundation has a Control Number, 000763916, as reported by the Tennessee Secretary of the State and has an EIN #47-1301607.

The Defendant is on file of being Non-Profit Domestic Corporation, doing business in Tennessee.

The Tennessee Secretary of State does not list a registered agent for the entity, in fact, a phone call to the Secretary of State provides information that the Morning Pointe Foundation lists itself as the registered agent.

A more specific individual, based upon a May 11, 2020 conference call with Morning Pointe Foundation, indicates that a Mr. Aaron Webb, the Chief Operating Officer, would be the appropriate individual recipient for the entity.

Morning Pointe Foundation's Corporate Office is located at:

**6020 Arbury Way**

**Ooltewah, TN. 37363**

**877-776-4683**

STATE CLAIM #2

<u>Jurisdiction</u>:  This Court already has jurisdiction in this matter, under 28 U.S.C. Section 1367.

<u>Plain Statement of the Claim and Facts Showing that the Plaintiff is Entitled to Relief: 1-4</u>

1.  Defendant has breeched the Rules of Tennessee Department of Health Board For Licensing Health Care Facilities; Chapter 1200-08-25 Standards For Assisted-Care Living Facilities; More specifically 1200-08-25-.14 RESIDENT RIGHTS <u>(1)(o) To associate and communicate privately with persons of his or her choice, including receiving visitors at reasonable hours. T</u>he Plaintiff is the 3rd party expected beneficiary visitor who is being denied visitation rights under law and is being damaged.

2.  Defendant has breached  the <u>State of Tennessee Department of Health</u> orders and guidelines, as directed to Morning Pointe Assisted Living, set in the March 28, 2020 guidelines 1. <u>KEEP COVID-19 FROM ENTERING YOUR FACILITY</u> BY restricting all visitors EXCEPT for compassionate care situations (e.g. end of life) This was signed into effect by Commissioner Dr. Lisa Piercey and is in effect as of this date.

3.  Defendant has breached the contract entered between Defendant and Plaintiff's mother; mandating visitation rights  reasonably expected by any 3rd party beneficiary. Plaintiff is the 3rd party foreseen beneficiary visitor.

4.  Defendant has breached its duty in allowing other visitors to enter the facility, who do not fall into state allowed categories (1) end of life care, "compassionate care "visitation and (2) critical assistance visitation.

Statement of Facts Concerning Morning Pointe  Foundation


This case was transferred to the Eastern District of Tennessee, Winchester Division on or about May 19, 2020, on the request of the Plaintiff, because venue was more proper at that location.

<u>Judge Waverly D. Crenshaw, of the Middle District of Tennessee, Nashville Division, identified that Morning Pointe may have been interpreting "end of life care "too narrowly causing irreparable harm to Plaintiff. Judge Crenshaw reminded Morning Pointe that Plaintiff had been COVID tested regularly and agrees to be tested regularly in the future, therefore, asking Morning Pointe to</u>

reconsider their own unique  "end of life care" guidelines to avoid such identified irreparable harm. (Order of May 8, 2020.)

Judge Crenshaw asked Morning Pointe, in his ORDER, (May 8, 2020) to enter a volunteer discussion with the Plaintiff on a conference call on May 11,2020. The judge's Clerk sent a copy of all documents on file with the Court to Morning Pointe PRIOR TO THIS CONFERENCE CALL. Morning Pointe accepted and agreed to the discussions. Judge Crenshaw, to facilitate effective communication, appointed on a limited and temporary basis, Attorney Bill Harbison  as the Plaintiff's attorney.

The conference call produced and included:

1) Aaron Webb, a licensed Tennessee attorney, who also is the Chief Operating Officer of the Morning Pointe Foundation.
2) Mandy Taylor, Morning Pointe clinical director
3) Tana Branch-Philpot, Morning Pointe Director at the Tullahoma location.
4) Mary Watson, Morning Pointe corporate personnel, unknown title.
5) Nancy Wood, Morning Pointe Corporate Director of Nursing
6) William Harbison, attorney to Plaintiff assigned on a temporary basis.
7) Plaintiff Ron Glasgow
8) Judge Waverly D. Crenshaw, Federal District Judge

**Plaintiff asked Mr. Aaron Webb the following question:**

***NOTE Mr. Webb stated, at the beginning of the conference call, that as a licensed attorney, he was not representing Morning Pointe Foundation. This entity was not a defendant at that time.

If  Governor Bill Lee, amended his ORDER 30, and removed the word IMMINENT before the "end of life care" phrase, or if the Governor allowed your company discretion in the matter of visitation, would you allow me (Plaintiff) visitation to my mother?

Mr. Webb's answer was "NO". Mr. Webb then stated that he would need a written agreement that his company would not be sued if a resident got the

COVID virus. This statement was given even though Mr. Webb knew that the Plaintiff had been recently COVID tested twice in recent days and agreed to be regularly tested.

Additional Plaintiff's Arguments Against Morning Pointe Foundation

1. Mr. Webb's answer of "NO," denying Plaintiff potential future visitation, indicates his company objective to be the expert in the field in responses to COVID in long term facilities and the willingness of violating Plaintiff's visitation rights. It shows a disregard to comply with the guidelines of the Center of Disease Control (CDC), Tennessee Department of Health, and the Center for Medicare and Medicaid Services (CMS).

Plaintiff's mother is receiving hospice care in this facility, which is being paid by Medicare. Plaintiff's mother is receiving Veterans Administration aid and attendance monetary benefits to stay at Morning Pointe Assisted Living.

Defendant Morning Pointe Foundation is licensed by the State of Tennessee as a long-term health facility, however, is disregarding the visitation guidelines set by the TN. Department of Health, as it relates to compassionate care, i.e., end of life care. Plaintiff pays, each month, a portion of the $4,255.00 to Morning Pointe.

Morning Pointe is violating visitation rights identified in Federal Regulations 43 CFR 483.10. Residential Rights, as amended in 2017.

2. Morning Pointe Foundation accepted the invitation, to participate in the conference call, the subsequent conversations thus not protected by privilege, normally afforded by public policy. Morning Pointe Foundation was not a Defendant at the time of the conference call, nor was being considered a defendant. Plaintiff, at that time, only thought that Morning Pointe was detrimentally relying on the Governor Order 30, by inserting the word "IMMINENT" before "end of life care". Therefore, Morning Pointe is now ripe as a

Defendant, as causing actual damage and other harm, so identified by Judge Crenshaw.

3.   Morning Pointe Foundation's, disallowance of the Plaintiff, now and in the future, to not allow visitation is a current and anticipatory intended breach of Plaintiff's visitation rights.  Plaintiff has used every means imaginable to show that he would be the less likely individual to cause COVID transfer to any resident.(no risks to the residents) Plaintiff's mother is also free of COVID, as evidence given in a written document by her primary care physician, on file with the Morning Pointe Foundation, on or about April 23, 2020.

However, Morning Pointe Foundation has not performed by the same safeguards in protecting the residents in their facility. At this present date, Morning Pointe has just recently for the first time ( May 31, 2020) COVID tested their 30+ employees. This is evidence that Morning Pointe did not perform the best practice. The  assisted living facility is in Coffee County, and in the same town of Tullahoma that the Coffee County Health Department is located. The Health department gives free COVID testing 5 days per week, as early as April 23, 2020. The Plaintiff has three times been tested at this location. The fact that Morning Pointe Foundation has not tested their employees was given to the Plaintiff per a conversation of one of their managers on May 16, 2020 and was verified by another employee on May 17, 2020. Therefore, the Morning Pointe Foundation is guilty of latches, having unclean hands, but treats the Plaintiff in a  different manner. Also, Morning Pointe did not require Hospice personnel to be COVID tested upon entry to the facility.

Defendant Morning Pointe's 30+ employees are in a different class group than Plaintiff for the argument of safety protections. Their employees have spouses, have children, and have family members living in the same household. They work 8 to 10 hrs. per shift and have part-time employees coming and going each day. There were acting as "de facto visitors". Here, in comparison, Plaintiff lives by himself in a single-family dwelling, and socially isolates and performs social distancing during this pandemic.

The CDC, TN Department of Health, and the CMS guidelines for visitation, mirror the same guidelines for employees of long-term facilities in Tennessee.

4.   Plaintiff's sister, adult child of Plaintiff's mother, did attempt a face time computer visit with Plaintiff's mother on May 13, 2020. It was unsuccessful due to the lack of concentration, confusion, and hearing loss. It was not commensurate with a soon to be 99 year of age terminally ill  hospice patient.

A similar way of communication was earlier performed by the same adult child by visiting from the outside of a window. It was also unsuccessful.

Plaintiff was informed by a Morning Pointe Foundation manager, on May 16, 2020, that the residents are not allowed to leave their rooms unless they are checking in their mailbox inside the facility. This social isolation, of the Plaintiff's mother ,further causes harm, thus gives additional credibility to Plaintiff's visitation rights.


5.   Defendant Morning Pointe's employee nurse told Plaintiff on May 16, 2020, that Plaintiff's mother was vomiting bile that morning. Bile is the stomach acids in the small intestines that  gets excreted through the esophagus when there are no contents in the small intestines. Bile is stored in the gallbladder. This is not normal.  Plaintiff's mother has lost significant weight and is presently 98 lbs.  The weight loss is a significant indication of the dying process. Records and communications given to the Plaintiff indicate that the Plaintiff's mother is at end of life, without being afforded 1st amendment rights for herself or for Plaintiff for visitation purposes, thus not affording religious practice.

These additional factors are also present:

  1)  Different sleep-wake patterns ( sleeps 20 hrs. per day)
  2)  Little or no appetite, little thirst
  3)  Smaller or insignificant bowel movement
  4)  More pain
  5)  Changes in breathing patterns
  6)  Withdrawal from people
  7)  Talks less
  8)  Confusion
  9)  Hallucinations
  10)      Feels tired and does not leave the room

11) Loss of bladder or bowel control
12) Weakening muscles

The Defendants are not only causing actual damage and harm, but also causing pain and suffering damages.

6.  Plaintiff's mother still has individual rights that she expects the Plaintiff to follow. She wants to remain in the assisted living facility because of the 30+ employees that serve responsibilities of care in some form or fashion. (housekeeping, kitchen personnel, nurses, attendants ,etc.) However, Plaintiff's mother does not know that she is at the end of life. She does not know about her cancer and the Plaintiff cannot inform her of these medical conditions over the telephone. It would be inhuman to do this over the telephone. Plaintiff knows his mother better than she knows herself, in other words, Plaintiff's mother would demand that Plaintiff use any means possible to gain access to visitation into the facility, to provide and facilitate religious freedoms and other state constitutional rights. She begs the Plaintiff for visitation each day. It affects her emotional well-being and mental health. She is very unhappy because of the refusal of visitation.

Plaintiff took his mother to his house, for 2 weeks, prior to April 23, 2020 and prior to hospice care. Plaintiff's mother asked him to take her back to Morning Pointe because she considers that her home. She thought that she could receive more services ant the facility. Also, Plaintiff's home has an unsafe roof structural damage from a large oak tree falling directly on the roof. The insurance claim has not been completed. There is a question of safety for visitors to the house.

7.  Morning Pointe Foundation, Tullahoma location, only has a staff of LPN. (licensed practical nurses) They do not have a registered nurse more highly trained in identifying complications for the aged community. The facility only has a nurse on duty from 6am to 10 pm. The 10pm to 6am shift only has 3 attendants for the 40+ residents, some of which are on hospice. The visitation of the Plaintiff would allow a more proper amount of care to the Plaintiff's mother. Attendants must check on the residents every 2 hours during 10pm to 6am. A resident appearing to be asleep in bed might, in fact,  might be near death to the

untrained non- medical staff. A hospice nurse may or may not be able to be summoned during these night-time hours.

8.  Plaintiff's mother fell in her room, on June 2, 2020, causing a shoulder fracture.

A much-promoted Morning Pointe window visit was being attempted. Plaintiff contends that Morning Pointe was negligent in their assistance in this awkward outside visit causing physical damage to Plaintiff's mother.

9. A letter was sent to Plaintiff,  by Lang Wiseman, Chief Counsel of Defendant Governor Lee, on May 13, 2020. The letter seems to place responsibilities to Morning Pointe Foundation concerning a case by case determination for visitation rights for end of life care. He seems to think that the Licensed Practical nurses, which Morning Pointe only employ are the experts in the field and should make visitation decisions. Morning Pointe seems to pass the responsibility back to the Defendant Governor Bill Lee or are waiting on some magic letter protecting them from liability claims if any resident gets the COVID virus.

Plaintiff has personally seen 2 different Directors of Nursing , at the Tullahoma facility, be terminated, for cause, which Plaintiff identified and reported  acts directed at Plaintiff's mother,  which caused or effected the terminations. These terminations both occurred in the last 2 years 9 months. There have also been several nurses terminated for cause during this same time period. Mr. Wiseman seems to think that medical professionals at the facility are immune from making bad medical decisions, especially concerning end of life care visitation. Those decisions should best be decided by the true experts in the field ,i.e. CDC,CMS, TN. Department of Health.

10.  As of this date, there are no reported cases of COVID in any long-term facility in Coffee county. Plaintiff contends, to the best of his knowledge, there are only 4 of the 95 counties in Tennessee who reported COVID to any resident in long term facilities.

Plaintiff again was COVID tested on this 19th Day of May ,2020. This makes the 3rd consecutive test. Plaintiff will continue to be COVID tested every 2 weeks.

11.  Morning Pointe has constructive notice of the information contained within from conversations and filings afforded to them. The Clerk of the Court has sent them the entire documents before the May 11, 2020 Conference call.

Governor Bill Lee has constructive notice, not knowing if the earlier summons has been delivered, but because of the conversations that occurred between Mr. Wiseman and Attorney Harbison, and Jane Young, attorney for the Tennessee Department of Health.

12. Plaintiff's mother's primary care physician, Dr. Tucker, has ordered visitation by family members for the emotional support of the mother.

13.  In a second phone conversation with Mr. Aaron Webb, on Thursday May 28, 2020, Mr. Webb told Plaintiff that he considers the "IMMINENT" word before or removed from the term "End of Life Care", to have the same meaning for "end of life care".

14. Most recently, on June 2, 2020, Plaintiff observed a female, Ms. Tammy Buckner leave Morning Pointe Assisted Living after visiting Bruce Galbraith. Mr. Galbraith is a resident of the facility. Plaintiff engaged in conversation with Ms. Buckner whereas she said that she has been permitted to enter the facility the last 4 weeks and perform social visits to Mr. Galbraith. She stated that she signs the visitor book each time. She stated that she gains entrance by "working behind the lines". She is employed by HOME INSTEAD SENIOR CARE, a Tullahoma business. Ms. Buckner left the building and then reentered it after going to the bank for Mr. Galbraith. Plaintiff visited, that day, the business whereas a manager stated that they go through a Morning Pointe process to enter the facility.

15. Plaintiff has seen other individuals, who appear not to fit in the category of allowed visitation, enter the facility. One is Dave Hammonds, who is a physical therapist. There have also been other questionable visitors allowed in the facility.

Demand for Relief Sought: Plaintiff seeks monetary damages, to be later determined, for actual damage, real damages, perceived damages, pain and suffering damages, punitive damages, consequential damage, and all other

damages and relief allowed by state laws and from the Court. Plaintiff also seeks any equitable relief that the Court deems appropriate.

Jury Demand: Plaintiff demands a jury trial all issues triable

Attachments Already on file and earlier delivered to Defendant:

1) ORDER of Judge Waverly D. Crenshaw, May 8, 2020
2) Letter from Attorney Lang Wiseman, May 13, 2020
3) Affidavit of Plaintiff Ron Glasgow, May 13, 2020
4) Centers for Medicare and Medicaid Services (CMS) Guidance for Infection Control, March 13, 2020
5) CDC Interim Guidance for Retirement Communities, March 31, 2020

NEW Attachments:

1) Notice of Social Visit Allowed by Morning Pointe On June 2, 2020
2) Business Pamphlet of HOME INSTEAD SENIOR CARE
3) Statement of Dr. Tucker, May 29, 2020.

Respectfully Submitted this 4th Day of June, 2020

Ron Glasgow, Plaintiff, Pro Se

603 Stone Blvd.

Tullahoma, TN. 37388        cell 404-579-5162

CERTIFICATE OF SERVICE

I AFFIRM THAT I HAVE this 4th day of June, 2020 sent a copy of  Plaintiff's Amended Complaint, State Claim #2 and all new attachments to Defendant's

attorney of record, by U.S. mail with proper postage attached and addressed as follow:

Lang Wiseman

Chief Counsel to the Governor

State Capital

600 Charlotte Ave,

Nashville, TN 37243

Aaron Webb, Chief Operating Officer, for Defendant

6020 Arbury way

Ooletewah, TN 37363

This 4th day of June, 2020

Ron Glasgow, Plaintiff Pro Se

603 Stone Blvd., Tullahoma, TN 37388    Cell 404-579-5162

# NOTICE OF A SOCIAL VISIT ALLOWED BY MORNING POINTE ON JUNE 2, 2020

I was waiting for an ambulance to take my mother, Golda Glasgow, a resident of Morning Pointe Assisted Living- Tullahoma, to the hospital on June 2, 2020.

I noticed, at 12:15 pm, a female exiting Morning Pointe Assisted Living wearing a shirt with the logo HOME INSTEAD SENIOR CARE.

I engaged in a conversation with her and inquired as to her visit and the company.

She identified herself as Tammy Buckner and stated that she visits Bruce Galbraith, resident, for social visits in his room. She informed me that she works for Home Instead which sends her out for these visits. She further stated that she has been doing it for Bruce for the last 4 weeks and performs it as emotional support visits. I asked her if she signs "in" and she said "yes".

I asked her if she has any problem getting in the facility. She said that she "works behind the lines" and that she has no other clients in any other facility because of COVID . She further stated that she visits the remainder of her clients at their homes.

She left the property and returned in her Blue Ford Escape Tag SN 5792 at exactly 12:40pm. I again engaged her in conversation, and she stated that she went to the bank for Bruce Gailbraith. She met Bruce at the front door and then went inside the building. The Director of Morning Pointe was standing near me while Ms. Buckner entered the building. Ms. Buckner was still inside the building when I followed the ambulance at 12:47pm.

I later this day, went to Home Instead Senior Care , 603 NW Atlantic St, Tullahoma. I spoke with a lady who said they charge $20.50 per hour for social visits like Ms. Buckner does  with Bruce Galbraith. The unidentified representative stated that they go through a Morning Pointe process to get approval to enter the facility. I acted as though I was interested in their service in order to facilitate open communication.

Ron Glasgow _____ June 2, 2020

## Home Instead CAREGivers can provide a variety of services. Some include:



**Companionship and Home Helper**
Meal Preparation
Medication Reminders
Accompany to Doctor Visits
Grocery Shopping
Laundry and Linens
Light Housekeeping
Socializing



**Personal Services**
Bathing
Dressing
Incontinence Care
Mobility Assistance



**Alzheimer's or Other Dementias**
Minimizing Behavioral Symptoms
Encouraging Engagement
Keeping the Person Safe
Supporting the Family



**Transitional Care Services**
Incidental Transportation
Prescription Pick-up
Hospital Discharge Assistance



**Hospice Support**
Supplemental Support Services
Respite for Family Members



# You can't always be there.
## *But we can.*

**You are putting your trust in us, and we understand that. Your loved one's care is your biggest concern. Each of our Home Instead® CAREGivers℠ exemplifies our values of compassion, confidence and expertise.**

Our commitment to quality in-home care begins with the unique CAREGiver training program we utilize. This comprehensive educational experience equips our CAREGivers to provide individualized care to every person they serve. They share a deep passion for delivering valuable home care to your family.



## From companionship to Alzheimer's care, our Home Instead Senior Care office can help.

A panel of experts, from geriatricians to practitioners, have worked with our network to develop content and enhance our Alzheimer's and Other Dementias CARE: Changing Aging Through Research and Education® training program

Case 4:20-cv-00020-RM-SKL   Document 32   Filed 06/04/20   Page 29 of 30   PageID #: 90

# STATEMENT OF DR. DONALD TUCKER, MD

I am Golda C Glasgow's primary care physician and continue to have her as a patient as of this date.

Ms. Glasgow was placed into hospice care on April 22, 2020 because of a terminal illness, therefore she is receiving "end of life" care, commonly referred to as "compassionate care".

In my professional opinion, visitation by her family, more specifically her son, Ron Glasgow, can safely be performed and accomplished without unreasonably risk to other residents or staff at Morning Pointe Assisted Living- Tullahoma.

Ron Glasgow has shown proof of recent negative covid testing, the latest being May 20, 2020. Ms. Glasgow was cleared for COVID by my earlier written statement.

The facility has in place, visitor screening procedures outlined in guidelines of the CDC, and Tn. Department of Health.

This visitation is needed, on a continual basis, for the emotional support of Ms. Glasgow.


Sincerely,

Donald Tucker, MD_____ May 29, 2020

100 William Northern Blvd.

Tullahoma, TN 37388

931-454-0489